JONAS PHILLIPS, Appellant *v.* JOHN L. TAYLOR, Respondent.

*Court of Appeals. January 26, 1886.*

1. *Contract. Breach.*—Under a contract for prompt shipment, the seller is compelled to use reasonable diligence, and proof that he has not availed himself of existing facilities for complying with the contract, establishes a *prima facie* case authorizing an inference of culpable omission amounting to a breach of the contract.

2. *Same. Part delivery. Acceptance.*—The purchaser, in such case, is not in duty bound to reject part deliveries at the peril of being deemed to have given the vendor an indefinite extension of time for the performance of his contract.

3. *Same. Evidence. Explanation.*—In an action brought to recover, for the contract price of 56 bales of Leghorn rags, sold and delivered by plaintiff to defendant, where an agreement to sell and deliver 450 bales of rags, and a breach of such contract, are set up as a counter-claim, proof, on the part of the defendant, of a resale of the goods to other parties, and of their refusal to accept after a specified date by reason of the delay, caused by plaintiff's failure to fulfill, is competent for the sole purpose of explaining facts brought out by the plaintiff to establish a waiver as to time of performance.

4. *Trial. Charge to jury. When harmless.*—In determining whether propositions of a charge, which have been excepted to as erroneous, constitute errors for which the judgment below must be reversed, the appellate court must also consider whether the verdict could have been affected or influenced by such errors; and if the verdict was not influenced by them, the judgment will not be reversed.

5. *Same. Question for the jury.*—Where the evidence as to a waiver of the agreement to ship promptly, on the part of the defendant, is not conclusive, but conflicting, the question is properly submitted to the jury.

RAPALLO, J.—The questions in this case arise upon the counter-claim set up by the defendant, and upon which he recovered against the plaintiff. The plaintiff brought the action to recover about $1,000 for the contract price of

fifty-six bales of Leghorn rags, sold and delivered by him to the defendant. The defendant, by his answer, admitted the plaintiff's cause of action; but alleged, as counterclaims, two written contracts whereby the plaintiff had agreed to sell and deliver to him 450 bales of rags, and the breach by the defendant of those contracts. The jury rendered a verdict in favor of the defendant, and against the plaintiff, for $2,865.74 in excess of the plaintiff's claim.

The case comes before us on exceptions to rulings of the judge before whom the trial was had, and to his charge to the jury; the general term having overruled such exceptions and affirmed the judgment on the verdict.

On the trial the defendant was allowed the affirmative of the issue, and put in evidence two written contracts, both dated October 29, 1879, by one of which the plaintiff, through brokers, sold to the defendant 200 bales of Leghorn cotton stripes, *for prompt sale shipment*, at 2⅝ cents per pound; terms cash in thirty days from delivery; and by the other of which the plaintiff sold to the defendant 250 bales cotton stripes at 2¾ cents per pound *for prompt steamer shipment*, on the same terms. The contract bore marks which denoted the quality of the rags, which were to be shipped from Leghorn, Italy, to the defendant at New York. Seventy-five bales of the rags arrived per *steamer*, and were delivered and paid for December 18, 1879. Thirty-five bales, under the *said* contract, were delivered and paid for February 2, 1880. The fifty-six bales sued for arrived on the 4th and 5th of March, 1880, and were delivered, but were not paid for. Other deliveries were offered to the defendant in the latter part of March, 1880, but were refused, and the defendant notified the plaintiff in writing, on the 25th of March, that he would not accept any further delivery under the contracts unless the plaintiff would pay such damages as the defendant had sustained by reason of the plaintiff's failure to deliver within the time provided by the contracts. Of the 250 bales which the plaintiff had sold

to the defendant for prompt steamer shipment 144 bales were never delivered, and of the 200 bales sold for prompt sail shipment 140 bales were never delivered, the defendant having refused to accept any deliveries after the 25th of March; and the counterclaim is for the difference between the contract price of those rags and their market price at New York at the time when, as the defendant claims, they should have been delivered if promptly shipped from Leghorn as required by the contracts.

It was proved at the trial, on the part of the defendant, that the exportation of rags from Leghorn was a large business; that in October, 1879, when the contracts were made, orders might be sent to Leghorn by cable or by mail by way of England. It was admitted on the trial that the time by mail between New York and Leghorn was twelve days, and that the average time of passage from Leghorn to New York was, for steamers, forty days, and for sailing vessels sixty-five days. The contracts were dated and delivered October 29, 1879. On the 18th of December, 1879, seventy-five bales of the rags per steamer, and on the 2d of February, 1880, thirty-five bales of the rags under the sail contract, were delivered to the defendant at New York, and were accepted and paid for. No further deliveries were made or tendered until the 4th and 5th of March, 1880. It was alleged in the counterclaim that, at the time when the rags would have arrived in New York if plaintiff had shipped them in accordance with the terms of said contract, the market value thereof was $4\frac{1}{2}$ cents per pound, and it was further alleged therein that the defendant had made contracts for the resale of the rags to his customers. It appeared in evidence that the market price in New York advanced in November and December; that during the month of January it advanced to $4\frac{1}{2}$ cents; and that during February it was from $4\frac{5}{8}$ to $4\frac{3}{4}$ cents, and that there was no particular change until shortly after the 1st of March, 1880, when the market broke and prices fell rapidly. The de-

fendant testified that the market broke on the 10th of March. Two deliveries under the contract appear to have been made on the 4th and 5th of March, 1880, viz.: one of twenty five bales, per sailing vessel, on the 4th of March, and one of thirty-one bales, per steamer, on the 5th of March. These deliveries were accepted, but not paid for, and it was for the price of these fifty-six bales that this action was brought.

The plaintiff, at the close of defendant's testimony, moved to dismiss the counterclaim, on the ground, among others, that the defendant had failed to prove that the plaintiff did not cause the rags to be shipped as required, or that there were opportunities for shipping them at a time earlier than they were shipped. This position is not, in our judgment, well taken. The contract was for prompt shipment. Throwing out of view the defendant's evidence as to the meaning of this term, it certainly called for the exercise of reasonable diligence. It was admitted on the trial that the length of time by mail between New York and Leghorn was twelve days, but it was also proved, on the part of the plaintiff, that in October, 1879, orders might be sent to Leghorn by cable. That this course was adopted, is apparent from the fact that the first lot delivered to the defendant, under the contract for shipment by steamer, was of seventy-five bales, which arrived by the steamer Olympia, which steamer was admitted, by stipulation upon the trial, to have sailed from Leghorn on the 8th of November, 1879. By the same stipulation it was admitted that other steamers sailed from Leghorn on the 1st, 9th, 22nd, and 27th of December, 1879, and on the 7th and 19th of January, 1880 ; but no further steamer shipment was made until that of thirty-one bales which arrived by the Alexandria, which steamer appears, by the same stipulation, to have sailed from Leghorn on the 29th of January, 1880. This is the shipment delivered on the 5th of March, 1880. These are the only shipments tendered, under the steamer contract, prior to the 25th of March,

when the defendant refused to accept any further deliveries unless the plaintiff would consent that he should receive them without prejudice to his claim for actual damages sustained by the delay. Under the contract for prompt sail shipment, the first lot received was twenty-five bales by the Lloyd, which appears by the stipulation to have sailed January 1, 1880, and the second by the Consylir, which appears to have sailed January 12, 1880, though by the same stipulation it appears that between November 6, 1879, and January 1, 1880, five sailing vessels had left for New York from Leghorn, by which no shipments were made under the contract.

These facts were quite sufficient to render it incumbent upon the plaintiff to explain the great delay in making the prompt shipments contracted for, and to show why he did not avail himself of the facilities, thus apparently within his reach, to comply with his contract, or, at least, make efforts to ship by the vessel admitted to have sailed. The facts were within the knowledge of the plaintiff, rather than of the defendant, and the circumstances proved established at least a *prima facie* case authorizing an inference of culpable omission, on the part of the plaintiff, to make prompt shipments, or that, if shipments had been made, they had not been delivered to the defendant.

As a further ground for the motion for dismissing the counterclaim, the plaintiff urged that the defendant had, down to March, 1880, treated the time for the performance by the plaintiff of his contract as still open, and had estopped himself from taking a position to the contrary. The alleged estoppel is predicated on the facts that the defendant accepted the rags delivered on the 4th and 5th of March, 1880, and that up to that time he had been urging the plaintiff to fulfill his contract, and upon the further allegation that in March, 1880, the defendant had requested the plaintiff to cable to Leghorn for the residue of the rags. Although the deliveries on the fourth and fifth of March

were late, yet the price in New York was still sustained. The defendant was not bound to reject those deliveries at the peril of being deemed to have given to the plaintiff an indefinite extension of the time for the performance of the contract. No further delivery was tendered until about the 25th of March, when the plaintiff's breach of his contract was still more clear, and the market price in New York had declined. We do not think that the acceptance of the deliveries on the 4th and 5th of March bound the defendant to accept further deliveries on and subsequent to the 25th of that month.

The allegation that in March, 1880, the defendant requested the plaintiff to cable to Leghorn for the residue of the rags called for by the contract is not sustained by the evidence, certainly not by uncontroverted evidence, which would be necessary to make it a good ground of nonsuit. The evidence, at the time the motion was made, was that some time, perhaps a week, before the 4th of March, Mr. Dedell, the broker through whom the contracts were made, informed the defendant that the plaintiff had sent, or intended to send, a cable in reference to the residue of the rags. There was no evidence that the defendant requested this cable to be sent, but on the 4th of March, 1880, the defendant sent to the plaintiff the following letter, which was received in evidence without objection:

"NEW YORK, *March*, 4, 1880.

"*Mr. James Phillips, New York*—DEAR SIR: My party has made a claim on me for $4,550 for non-fulfillment of contract on R. C., for which I shall hold you responsible, I am trying to arrange the matter so there will be no loss to either of us. I would be pleased to hear from you as soon as you have a reply to your cable telling your party to ship balance of order by steamer at once.

"Yours, etc.,

"JOHN L. TAYLOR."

This letter clearly indicated to the plaintiff that the defendant regarded the contract as having been violated, and the plaintiff as being liable for the damages, and that whatever deliveries were subsequently received would be received with the view of reducing or avoiding those damages, and that no extension of time or modification of the original contract was intended.

On the 25th of March, 1880, the defendant sent the following letter to the plaintiff, confirming this position:

" NEW YORK, *March* 25, 1880.

*Mr. Jonas Phillips, New York*—DEAR SIR : I return you the order for thirty-three bales R. C. on bark Agastino Repetto, as I cannot accept the thirty-three bales, nor any further delivery under our contracts of October 29, 1879, as deliveries under said contracts, unless it is understood between us that you will pay such damages as I have sustained by reason of your failure to deliver them at the time provided for in the contracts. The party to whom I had contracted to sell them refuses to receive them by reason of the long delay, and hold me responsible for the damage they have sustained. If you are willing that I should receive them without prejudice to my rights to claim actual damages incurred by the delay, then I will receive them on said terms, but not otherwise. I will exert myself to make the loss as little as possible, by the resale of the goods; or I will take this thirty-three bales and apply it on the contract for this grade for shipment in April and May. Please send me reply at once what you decide to do.

" JOHN L. TAYLOR."

This letter was replied to by the plaintiff on the 27th of March, as follows:

NEW YORK, *March* 27, 1880.

" *Mr. John L. Taylor*—DEAR SIR : I am in receipt of your letter of 25th inst. and in reply beg to state that I expect you will receive the thirty-three bales R. C. rags from

Agastino Repetto now in port, as per contract of 29th October last, as well as those to arrive, sold to you under the contract. If you object to do so, I shall sell the rags in question for your account and risk, and claim from you any damages I may suffer.

" Yours truly,

" JONAS PHILLIPS."

The Agastino Repetto had, as appears from the stipulation, sailed from Leghorn on the 21st of January, 1880, nearly three months after the making of the contract, nine sailing vessels having left Leghorn in the meantime ; and, in the absence of any explanation, it can hardly be contended that this delay was not unreasonable. The correspondence above recited shows the positions of the respective parties, and indicates that the defendant, as early as March 4th, notified the plaintiff that he regarded the contract as violated ; that he had resold the goods, and that he would accept further deliveries with a view of reducing the damages ; and it rebuts the idea of any waiver by the defendant of the contract for prompt shipment, or of any inducement to the plaintiff to make further shipments, by holding out that they would be accepted as a due performance of his contract.

It further appeared in the defendant's testimony, brought out by the plaintiff, that up to the beginning of March the defendant sent messages to the plaintiff, through Mr. Dedell, the broker who had negotiated the contracts, urging the plaintiff to hurry the fulfillment of his contract. The defendant testified that during all that period he was hurrying the fulfillment of the contract, not the shipment of the rags ; and, on being interrogated, on his cross-examination by the plaintiff, with respect to his testimony on that subject given on a former trial of this case in regard to his messages through Dedell, he stated : "I wish to qualify that testimony in this way : that I was willing to take the

rags as long as my party would take them from me, and that was the reason I was urging the fulfillment of the contract." On his further direct examination he said that the substance of his language to Mr. Dedell, in sending these messages, was that the party he had sold to was pressing him to deliver the rags ; that they were paper manufacturers, and must have them ; and his messages to the plaintiff were that he was willing to take the rags as long as his own party would take them from him, and that he would not take them if his party refused to take them. After this testimony had been introduced, and the motion for a nonsuit had been made, the court, although it had, at a previous stage of the case, excluded evidence of the defendant's resale of the goods to other parties, admitted under exceptions, proof of such resale, and of the refusal of the parties to whom the defendant had resold to receive the rags tendered after March 5th by reason of the delay, for the sole purpose of showing that the time fixed by the defendant in his messages through Dedell was limited, and he confined the effect of the evidence solely to that point. Under the peculiar circumstances of the case, and in view of the fact that the testimony was admitted for the sole purpose of explaining facts brought out by the plaintiff for the purpose of establishing a waiver as to time, we cannot say that the trial judge erred in this ruling.

More difficult questions are presented by the exceptions to the judge's charge to the jury. The contracts set up and proved by the defendant, upon which he based his counterclaim, were for the sale of 250 bales of the described quality of rags, for prompt steamer shipments from Leghorn and for 200 bales for prompt sail shipments. The defendant, in support of his counterclaim, proved, by the testimony of a witness who had been for twenty years engaged in the business of importing rags from Leghorn, that prompt steamer shipments meant fifteen days after receiving the order, and prompt sail shipments within thirty

2

days. This interpretation was controverted by the plaintiff, who testified that the terms used meant within a reasonable time. On either theory, as has already been shown, the evidence required the jury to find that the time had been exceeded, and this evidence had not been controverted otherwise than by the attempt to show that the prescribed time had been waived or extended. In this condition of the evidence, the judge charged the jury, as matter of law, that when the plaintiff made a sale of goods, to be shipped promptly by steamer and by sail, he must be presumed to have had the goods on hand which he sold, and to have provided facilities to comply with his contract. These propositions were separately excepted to on the part of the plaintiff, and, as abstract propositions, we cannot sustain them. But, in determining whether they constitute errors for which the judgment below must be reversed, it is necessary to further consider whether the verdict could have been different from what it was, in respect to the subject referred to, and could have been influenced in those respects by the erroneous charge.

As to the first proposition, it was quite immaterial in this case whether or not the plaintiff had the rags on hand or not at the time he contracted to sell them. He agreed to sell them, and to ship them promptly. If he did not have them on hand at the time, he was bound, by his contract, to have them in time to ship them promptly, and his obligation to ship was the same as if they were in his possession when he entered into the contract. Saying that he must be presumed to have them on hand was a mere form of expression which did not vary his legal obligation.

The second proposition is more questionable; but, on a review of the whole case, could not have varied the verdict. Of course, it cannot be pretended that if no means of shipment from Leghorn had been shown, the contract would have bound the plaintiff to procure and send ships for the purpose. The contract, under the facts of the case, bound

the plaintiff only to avail himself of the ordinary means of shipment from Leghorn, and if he had shown that, by some misadventure or calamity, those means had been suspended, or had been so glutted with other freight that he was unable, notwithstanding due diligence on his part, to ship by them, he would have established a valid excuse for the delay, and the charge that he was presumed by his contract to have provided facilities for complying with it would have been an error for which the judgment should be reversed. But no such state of facts appeared. The evidence showed that a large number of vessels of both classes sailed from Leghorn during the time when the plaintiff might have performed his contract, and no excuse was offered on his part for not availing himself of them. On this state of the evidence the court would have been justified in charging the jury that the neglect of the plaintiff to make the shipments promptly had been established, and the charge that he was presumed by his contract to have provided facilities for the shipment added nothing to his liability on that branch of the case.

On a review of the whole case we are of opinion that the plaintiff showed no valid excuse for not having shipped the rags promptly, as required by his contracts ; that the proof on the part of the plaintiff established *prima facie* that, in the ordinary course of business between the two ports, such shipments might have been made ; that this evidence was not met by any proof on the part of the plaintiff ; that there was no conclusive evidence of a waiver, on the part of the defendant of the agreement to ship promptly, and, in so far as the evidence on that point was conflicting, the question was submitted to the jury, and was determined by their verdict.

The judgment should be affirmed.

All concur.